```
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      Alexandria Virginia


CITIGROUP INC.,                    )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )  Civil Action No. 1:09cv223
                                   )
<CITYBANK.ORG>,                    )
                                   )
     Defendant.                    )
```

REPORT AND RECOMMENDATION

This matter came before the Court pursuant to plaintiff's Motion for Default Judgment and an order by the Honorable Liam O'Grady. (Dkt. Nos. 10, 12.) After a representative for defendant failed to plead, respond to plaintiff's Motion or appear at the proof of damages hearing, the Court took plaintiff's Motion under advisement.

I. INTRODUCTION

On February 27, 2009, plaintiff Citigroup Inc. ("Citigroup" or "plaintiff") filed a Complaint against domain name <citybank.org> (the "Infringing Domain Name") seeking injunctive relief under the AntiCybersquatting Protection Act, 15 U.S.C. § 1125(d)(2) ("ACPA").

Plaintiff has moved for default judgment and requests the Court enter a permanent injunction directing that ownership of the Infringing Domain Name be transferred to plaintiff.  (Mot.

for Default J. ¶ 17.)

### A. Jurisdiction and Venue

This Court has *in rem* jurisdiction over the Infringing Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(C) because the <.org> Public Interest Registry, with which the Infringing Domain Name is maintained, is located in this District. (Compl. ¶ 4.) This Court has subject matter jurisdiction over this action under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). (Id. ¶ 5.)

Venue is appropriate in this District under 28 U.S.C. §§ 1391(a) and 15 U.S.C. § 1125(d)(2)(C) because the Infringing Domain Name is maintained by a domain name registry located within this District. (Id. ¶ 6.)

### B. Service of Process

The ACPA allows the owner of a mark to file an *in rem* civil action against a domain name and provides instructions on how to provide sufficient notice of such an action.[1]  On March 17, 2009,

---

[1] 15 U.S.C. § 1125(d)(2) provides, in pertinent part:

(A) The owner of a mark may file an in rem civil action against a domain name ... if

    (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

    (ii) the court finds that the owner –

        (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

2

the Court granted plaintiff's Motion for an Order to Publish Notice of Action. (Dkt. No. 6.) On April 6, 2009, plaintiff filed a declaration describing compliance with the Court's March 17 Order regarding publication of notice. (Dkt. No. 7.) The declaration sets forth the steps plaintiff took to properly publish notice of the pending action. According to the declaration, publication of the action was completed on March 20, 2009. Accordingly, plaintiff has provided sufficient notice of the pending action.

### C. Grounds for Entry of Default

The Court's March 17, 2009 Order authorizing plaintiff to publish notice of the action stated that "[a]ny answer or other response to the Complaint should be filed ... within twenty (20) days from the date of publication of this Order in the *Washington Times*." (See Dkt. No. 6.) To date, no party with an interest in the Infringing Domain Name has appeared or otherwise

---

(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by –

  (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided the registrant to the registrar; and

  (bb) publishing notice of the action as the court may direct promptly after filing the action.

(B) The actions under subparagraph (A)(ii) shall constitute service of process.
15 U.S.C. § 1125(d)(2)(A)-(B).

participated in the proceedings and the twenty-day window has long expired. (Mot. for Default J. ¶ 4.)

The Clerk entered default against the Infringing Domain on April 15, 2009. (Dkt. No. 9.) Plaintiff filed its Motion for Default Judgment on April 21, 2009 (Dkt. No. 10.) and a hearing was held before the undersigned Magistrate Judge on May 15, 2009. When no representative for Infringing Domain Name appeared at the hearing on plaintiff's Motion, the Court took the Motion under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiff has established the following facts.[2]

Plaintiff Citigroup, a Delaware corporation with principal place of business in New York City, is a world-renowned financial services company. (Compl. ¶¶ 2, 7; Blotner Decl. ¶¶ 3-4.) Plaintiff owns an extensive family of famous trademarks and service marks comprised of or featuring the trademarks "CITI" and "CITIBANK" (the "CITI Marks").[3] (Blotner Decl. ¶ 3; Compl.

---

[2] The pleadings include the Complaint (Dkt. No. 1), plaintiff's Motion for Default Judgment ("Mot. for Default J.") (Dkt. No. 10), and the declarations submitted in support thereof by Janet Shih Hajek ("Hajek Decl.")(Dkt. No. 13) and Sara B. Blotner ("Blotner Decl.")(Dkt. No. 15).

[3] The mark CITI, U.S. Reg. No. 1,181,467 (incontestable status), was registered with the United States Patent and Trademark Office ("USPTO") on December 8, 1981 for "financial

¶¶ 1, 7.) Plaintiff has made extensive use of the CITI Marks by providing its services throughout the United States in connection with the marks and has spent substantial sums advertising the CITI Marks. (Blotner Decl. ¶¶ 9, 10.) Consequently, the CITI Marks have become famous and represent to the worldwide consuming public the goods and services offered by plaintiff and its affiliates and/or licensees. (Id. ¶¶ 8-9.)

Subsequent to plaintiff's use and registration of the CITI Marks, the Infringing Domain Name was registered with Rebel.com, Inc., by Bhairab Bishwakarma (the "Registrant"). (Compl. ¶ 13; Blotner Decl. ¶ 11.) The Registrant registered the Infringing Domain Name without plaintiff's consent or the sanction of any court of law. (Compl. ¶ 13.) The Infringing Domain Name resides with the <.org> Public Interest Registry, which is maintained in Virginia, and is currently associated with a pay-per-click website that features links to plaintiff's competitors as well as links to other websites that advertise or sell competing products and services. (Blotner Decl. ¶¶ 12-13; Compl. ¶¶ 14-15.)

---

services included consumer and commercial lending, credit card services, real estate services, investment and advisory services and providing venture capital to others." (Compl. ¶ 8.) Similarly, the mark CITIBANK, U.S. Reg. No. 691,815 (incontestable status), was registered with the USPTO on January 19, 1960 for "banking services" and has been in continual use since February 2, 1959. (Id. ¶ 9.)

5

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Plaintiff contends that the unauthorized registration and continued use of the Infringing Domain Name violates 15 U.S.C. § 1125(d), which protects the owners of U.S. trademarks and prohibits the registration of Internet domain names that are confusingly similar to any trademark or dilutive of any famous trademark. (See Compl. ¶¶ 19-20.) Plaintiff further asserts that it has suffered, and continues to suffer, irreparable harm to its reputation and goodwill as a result of the registration and ongoing use of the Infringing Domain Name and, thus, seeks a permanent injunction transferring ownership of the Infringing Domain Name. (Id. ¶ 21.)

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate plaintiff's claims against the standards of Fed. R. Civ. P. 12(b)(6).

The Complaint alleges the Infringing Domain Name is confusingly similar to, and dilutive of, plaintiff's famous and protectable CITI and CITIBANK marks and, thus, the registration

6

and use of the Infringing Domain Name violates plaintiff's exclusive trademark and service mark rights in the CITI Marks. (Compl. ¶¶ 19-21; Blotner Decl. ¶ 15.) The statute sets forth the requisite elements as follows:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).[4]

The undersigned finds plaintiff has sufficiently pled that it has protectable rights in the CITI Marks. (See Compl. ¶¶ 1, 8-10.) First, plaintiff has used the CITI Marks extensively in the United States and worldwide in connection with its services

---

[4] Additionally, 15 U.S.C. § 1125(c)(1) further provides that "the owner of a famous mark that is distinctive ... shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences uses of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

and has made substantial investments in developing and maintaining the company's reputation and goodwill associated with the Marks.  (Id. ¶¶ 11-12; Blotner Decl. ¶ 10.)  Second, plaintiff registered the marks with the USPTO in 1960 and 1981, respectively.  (Blotner Decl. ¶¶ 5-6; Compl. ¶¶ 8-9.)

Plaintiffs also have sufficiently pled that the Marks are at least distinctive, if not famous.  "An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).  "Factors to consider when determining whether a mark has acquired secondary meaning include: (1) advertising expenditures, (2) unsolicited media coverage of the product, (3) sales success, (4) consumer studies linking the mark to the source, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use."  Venetian Casino Resort, LLC v. VenetianGold.com, 380 F. Supp. 2d 737, 742 (E.D. Va. 2005).  The Complaint establishes support for these various factors, including plaintiff's extensive advertising and continuous use of the Marks since 1981 and 1960, respectively.  (See Compl. ¶¶ 8-12.)

In addition, the Complaint, Motion for Default Judgment and supporting documents properly allege that the Infringing Domain Name is identical or confusingly similar to plaintiff's Marks. (See id. ¶ 17; Mot. for Default J. ¶ 13; Blotner Decl. ¶ 15.)

The confusing similarity standard is satisfied where, as here, the domain name is virtually identical to the plaintiff's marks. See Agri-Supply Co. v. Agrisupply.com, 457 F. Supp. 23d 660, 663 (E.D. Va. 2006). The presence of a typographical difference is not sufficient to avoid a finding of confusing similarity. See, e.g., Green v. Fornario, 486 F.3d 100, 103 n.5 (3d Cir. 2007).

Because the Infringing Domain Name is virtually identical to plaintiff's CITI Marks, plaintiff's actual and potential customers are likely to be confused and deceived into believing that the Infringing Domain Name is affiliated with plaintiff's services. Indeed, it appears that the registrant of the Infringing Domain Name has sought to capitalize on this confusion by diverting customers to pay-per-click websites for commercial gain.

## IV. RECOMMENDATION

For the reasons outlined above, the undersigned Magistrate Judge recommends that default judgment be entered in favor of plaintiff with respect to Infringing Domain Name <citybank.org> for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

Under 15 U.S.C. § 1125(d)(2)(D)(i), plaintiff's remedies include forfeiture, cancellation, or transfer of the domain name to the owner of the mark. Thus, plaintiff seeks injunctive relief requiring the Public Interest Registry to transfer

ownership of Infringing Domain Name <citybank.org> from its current registrar to plaintiff Citibank.  The undersigned recommends that such relief be granted.

## V.  NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within ten (10) days of its service.  A failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

                                         /s/
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE

July 1, 2009
Alexandria, Virginia